JOHN B. GROW, Respondent, *v.* HORACE GARLOCK et al., Appellants.

Where, as between themselves, two debtors stand toward each other in the relation of principal and surety, and this is known to the creditor, he is bound to respect such relationship, no matter how or when it arose, or whether he consented to it or not, and, although by the terms of the obligation held by him, the real surety occupies the position of principal.

In order to obtain money to pay a note executed by J. and indorsed for his accommodation by H., the latter executed to plaintiff his bond secured by mortgage upon his farm. J. afterward guaranteed the payment of the bond. Plaintiff at the time he advanced the money upon the securities knew that it was required to pay the note, and that this was given for J.'s debt. In an action to foreclose the mortgage, it appeared that J. gave to plaintiff a lien upon property of his own to secure the debt ; this lien plaintiff, without the consent of H., surrendered or abandoned. *Held*, that to the extent of the loss thus sustained by H. he was entitled to a reduction of his liability.

(Submitted June 27, 1884; decided October 7, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made the second Tuesday of June, 1882, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the material facts are stated in the opinion.

*Wayland F. Ford* for appellants. The mortgage in suit, being given for Jason Garlock by defendant Horace Garlock, and there being a valid agreement between them that the former should pay it in exoneration of the latter and his property, and plaintiff having knowledge of this relation and agreement, Horace Garlock was vested with the rights of a surety, and plaintiff was bound to observe the relation. (*Barnes* v. *Mott*, 64 N. Y. 397; *Colgrove* v. *Tallman*, 67 id. 95; *Millard* v. *Thorn*, 56 id. 406; *Paine* v. *Jones*, 14 Hun, 577; 76 N. Y. 274; *Vail* v. *Foster*, 4 id. 312; *Calvo* v. *Davies*, 73 id. 211; *Valley Nat. Bk.* v. *Myers*, 17 Bk. Reg. 257; *Bk. of Albion* v. *Barnes*, 46 N. Y. 170; *Trustees, etc.*, v. *Wheeler*, 61 id. 110; *Palmer* v. *Purdy*, 83 id. 144; *Gould* v. *Butler*, 127 Mass. 386; *In re Sterling*, 1 Am. Rep. [N. S.] 386; *Hinckley* v. *Krietz*, 58 N. Y. 583; *Oakley* v. *Pasheller*, 10 Bligh N. P. 548; *Morss* v. *Gleason*, 64 N. Y. 204; *Savage* v. *Putnam*, 32 id. 501; *Comstock* v. *Drohan*, 71 id. 9; *Russell* v. *Pestor*, 7 id. 171; *Dun* v. *Banks*, 6 App. Cas. 1; *Ludington* v. *Bell*, 77 N. Y. 141; 2 Kent's Com. [2d ed.] 465.) It is immaterial at what time the obligation of the parties to the creditors arose with reference to the creation of the debt. (64 N. Y. 403; 76 id. 274; 73 id. 211.) Plaintiff's acts were in fraud of the rights of Horace Garlock, the surety. (64 N. Y. 402; *Hayden* v. *Agent, etc.*, 1 Sandf. Ch. 94; *Cary* v. *Leonard*, 1 T. & C. 290; *Hirsh* v. *Munger*, 3 id. 290; Snell's Prin. of Eq. 425; *Campbell* v. *Rothwell*, 38 L. T. [N. S.] 33; 17 Alb. L. J. 252; *Boyd* v. *McDonough*, 39 How. 389; 127 Mass. 386; *De Puyster* v. *Hildreth*, 2 Barb. Ch. 109; *Chester* v. *Bk. of Kingston*, 16 N. Y. 336; *Hub-*

*bard* v. *Gurney*, 64 id. 458; *Newsam* v. *Finck*, 25 Barb. 175; *Rathburn* v. *Warren*, 10 Johns. 587; *Bangs* v. *Strong*, 7 Hill, 250; *Miller* v. *McCaw*, 7 Paige, 451; *Smith* v. *Townsend*, 25 N. Y. 479; *Baker* v. *Briggs*, 8 Pick. 122; *Mayes* v. *Crickett*, 2 Swanst. 193; *Pollock* v. *Everett*, 35 L. T. [N. S.] 350; *Pledger* v. *Bass*, 6 Jur. [N. S.] 695; *Lake* v. *Britton*, 8 De G., M. & G. 440.) The fact that a man has been charged with, arrested or indicted for an offense cannot be proved to his discredit. (*People* v. *Crapo*, 76 N. Y. 289; *Ryan* v. *People*, 79 id. 599; *N. Y. Guar. & Ins. Co.* v. *Gleason*, 78 id. 504.) The finding that plaintiff, when he took his mortgage, had no notice that any part of the purchase-price to defendant Snell was unpaid was contrary to the evidence. (*Ellis* v. *Horrman*, 90 N. Y. 473; *Williamson* v. *Brown*, 15 id. 354; *Taylor* v. *Baker*, 5 Price, 306; *Brumfield* v. *Boutall*, 24 Hun, 451; *Whitehead* v. *Jordan*, 1 Y. & C. 303; *Flagg* v. *Mann*, 2 Sumn. 554; *Nicolay* v. *Anger*, 80 N. Y. 57; *Maynard* v. *Beardsley*, 7 Wend. 561; *Carpenter* v. *East Tr. Co.*, 71 N. Y. 574; *Thompson* v. *Dickart*, 66 Barb. 604; *Turpenning* v. *Corn Ex. Ins. Co.*, 43 N. Y. 279; *Moorehouse* v. *Matthews*, 2 id. 514; *Weed* v. *Bibbins*, 32 Barb. 320; *Nicolay* v. *Anger*, 80 N. Y. 57; *Bedell* v. *Chase*, 34 id. 388; *Forbes* v. *Waller*, 25 id. 430; *Starin* v. *Kelly*, 88 id. 422.) Defendant Snell had a vendor's lien upon the premises after the giving of the deed to Garlock. (*Arnold* v. *Patrick*, 9 Paige, 310; *Lamberton* v. *Van Voorhis*, 15 Hun, 336; *Chase* v. *Peck*, 21 N. Y. 584; *Mackreth* v. *Symonds*, 15 Ves. 329.) The taking of the mortgage by defendant Snell in ignorance of plaintiff's mortgage does not release or extinguish his lien for the purchase-money relating from the date of the contract. (64 N. Y. 397; *Gregory* v. *Thomas*, 20 Wend. 17; *Mumford* v. *Stocker*, 1 Cow. 174; *Forman* v. *Lawrence*, 6 Y. & C. 644; *Barnes* v. *Comstock*, 1 Barb. 392; *Payne* v. *Wilson*, 11 Hun, 305; *Millspaugh* v. *McBride*, 7 Paige, 509; *Vanderkemp* v. *Sheeton*, 11 id. 28; Chitty on Cont. [11th Am. ed.] 116; *Cobb* v. *Dyer*, 9 Weekly R. 176.) Defendant Snell held a vendor's lien upon the premises prior to the time when plaintiff took his mort-

gage, and in order to obtain priority he would have to show all the facts entitling him to deprive Snell of the right thus owned. (*Cunningham* v. *Erwin*, 1 Hopk. 48; 8 Cow. 361; *Scudder* v. *Van Amburgh*, 4 Edw. Ch. 30; *Woodruff* v. *Cook*, 2 id. 259; *Frost* v. *Beekman*, 1 Johns. Ch. 288; *Magender* v. *Peter*, 11 G. & J. [Md.] 218; *Garson* v. *Green*, 1 Johns. Ch. 308; *Parker* v. *Fay*, 43 Miss. 260; *Russell* v. *Petree*, 10 B. Mon. 184; *Birch* v. *Ellames*, 2 Anst. 427; *Beekman* v. *Jones*, 44 Wis. 519; *Littleton* v. *Geddings*, 47 Tex. 109; *Youngs* v. *Wilson*, 27 N. Y. 354; *Carter* v. *City of Portland*, 4 Oregon, 340; *Hebins* v. *Chadbourne*, 45 Wis. 61; *Price* v. *McDonald*, 1 Md. 403; *Stockett* v. *Taylor*, 3 Md. Ch. 543; *Ryngold* v. *Bryan*, id. 488; *Carter* v. *Bank*, 22 Ala. 743; *McLeod* v. *First Nat. Bk.*, 43 Miss. 112; *Jaques* v. *Weeks*, 7 Watts, 261; *Epley* v. *Winthrow*, id. 167; *Lewis* v. *Bradford*, 10 id. 67; *Warren* v. *Levett*, 31 N. H. 341; *Munroe* v. *Eastman*, 31 Mich. 283; *Shotwell* v. *Harrison*, 30 id. 179; *Peters* v. *Goodrich*, 3 Conn. 146; *Sigourney* v. *Munn*, 7 id. 324; *Blatchley* v. *Osborn*, 33 id. 126.)

*Jno. C. McCartin* for respondent. Plaintiff, having advanced his money on the security of the mortgage without knowledge or notice of any lien by defendant Snell for unpaid purchase-money, as matter of law, had a prior lien by mortgage to Snell's lien for purchase-money. (Thomas on Mort. 33–4, 97; Willard's Eq. Jur. 301–2.) Snell waived and abandoned his lien when he took the mortgage for it, March 1, 1878. (Thomas on Mort. 31; Willard's Eq. Jur. 302; *Fish* v. *Howland*, 1 Paige, 20; *Shirly* v. *Sugar*, 2 Edw. Ch. 505.) If Horace and Jason borrowed money, both being active in so doing, and it was borrowed to pay the note, still Horace was a principal contracting party and not a surety, because the money was not borrowed alone for the accommodation of Jason, but Horace had also a personal interest therein. (3 Add. on Cont. [3d Am. ed.] 120; *Pitts* v. *Congdon*, 2 N. Y. 352–5; *Stillwell* v. *Life Ins. Co.*, 72 id. 385–8; *Mathews* v. *Coe*, 49 id. 57–60.)

Earl, J. This action was brought to foreclose a mortgage dated May 20, 1874, given by the defendant Horace Garlock to the plaintiff. It is alleged in the complaint that on the 16th day of February, 1875, the defendant Jason Garlock, by his writing indorsed upon the bond which the mortgage was given to secure, for value received, duly guaranteed the payment of the bond and mortgage, and a deficiency judgment is prayed against both Horace and Jason. All the defendants but Horace Garlock and Adam J. Snell suffered default. Snell alleged in his answer that he granted the mortgaged premises to Horace Garlock, and that he had a vendor's lien upon the premises for unpaid purchase-money which was known to the plaintiff at the time he took his mortgage, and which was therefore prior and superior to the lien of his mortgage ; and he also alleged, as did Horace in his answer, that the mortgage was executed by Horace with the knowledge of the plaintiff, for the accommodation of Jason Garlock, who was the principal debtor, and that the plaintiff had so dealt with Jason and his property as to release Horace from any liability upon his bond and mortgage.

The cause being at issue upon the answers of Snell and of Horace Garlock was referred to a referee who found that, at the time the plaintiff advanced his money and took his mortgage, he relied upon the records which showed a clear title to the premises in Horace Garlock, and that he had no knowledge that any of the purchase-money for the premises remained unpaid to Snell. He found as matter of law, among other things, " that as to the plaintiff the said Horace Garlock was the principal debtor as to the debt represented by the said bond and mortgage executed by said Horace Garlock to the plaintiff, and was not a surety for the said Jason Garlock as regards said debt, so that the release of any securities which the said plaintiff may have received from the said defendant Jason Garlock would not in any way affect the lien of the said Horace Garlock to the plaintiff for the payment of said debt," and he ordered the usual judgment of foreclosure in favor of the plaintiff, which was upon appeal affirmed at the General Term, and then Snell and Horace Garlock appealed to this court.

The following facts are undisputed: Sometime prior to the date of the mortgage, Jason Garlock borrowed of the Watertown Bank for his own use the sum of $2,000 and gave a note therefor made by himself and indorsed for his accommodation by his father Horace. The note was about falling due and the bank insisted upon payment, and Jason was unable to pay it. He and his father then applied to the plaintiff for a loan of money to take up the note, and they at first proposed to him to give him their joint note. This he refused to take, but said he would take a mortgage upon the father's farm; and so it was finally arranged that Horace should give the mortgage upon his farm to secure the loan. The bond and mortgage were then drawn and executed by Horace and delivered to Jason, who went with the plaintiff to the bank. There the plaintiff produced the $2,000 and took up the note and delivered it to Jason, and he then delivered the bond and mortgage to the plaintiff. Afterward, in February, 1875, at the request of the plaintiff, Jason guaranteed the payment of the bond and mortgage. The plaintiff had full knowledge of the nature of the bank debt, and the relations between Jason and Horace. He knew that the money was borrowed of him to pay the debt of Jason for which Horace was liable as surety. As between Jason and Horace, the debt to the plaintiff was really the debt of Jason for which Horace had bound himself and his property as surety. Jason was bound to indemnify Horace against any loss by reason of the bond and mortgage, and he at once became debtor to Horace for any money he paid upon the debt. As between them, upon the undisputed facts, Jason was the principal debtor and Horace a mere surety. These relations were known to the plaintiff, and hence he was bound to respect them. It may be that as to the plaintiff, Horace technically remained the principal debtor. But that is not a controlling circumstance. If, as between Jason and Horace, there was the relation, as to the debt, of principal and surety, no matter how or when it arose, and no matter whether the plaintiff consented to it or not, whenever that relation came to his knowledge, he was bound to respect it; and so it

has been abundantly held by authorities which control us. (*Colgrove* v. *Tallman*, 67 N. Y. 95; *Calvo* v. *Davies*, 73 id. 211; *Palmer* v. *Purdy*, 83 id. 144.) If Jason, recognizing his liability as principal debtor, placed any property in the plaintiff's hands, or gave him a lien upon any property to secure the debt, he was bound to keep and hold the property for that purpose, for the protection and benefit of Horace, the surety, and if he voluntarily gave up or surrendered the property or the lien to Jason, or wasted the property, or allowed Jason to waste it, then Horace, as surety, had just ground of complaint, and to the extent of his loss was entitled to a reduction of his liability for the debt.

There was evidence tending to show that the plaintiff had, in his dealings with Jason and his property, disregarded and violated the rights of Horace as surety; and, therefore, without examining other alleged grounds of error brought to our attention in the briefs, for the error in the finding of law by the referee, in substance, that the plaintiff was not bound to respect the relation of principal and surety existing between Jason and Horace, the judgment should be reversed and a new trial granted, costs to abide event.

All concur, except DANFORTH, J., absent.

Judgment reversed.