BANK OF UNITED STATES, Plaintiff, *v.* ISIDOR MOSKOWITZ and Others, Defendants.

City Court of New York, New York County, January 5, 1934.

*Carl J. Austrian* [*Warren C. Fielding, J. Francis Lynch* and *Clarence I. Blau* of counsel], for the plaintiff.

*Louis H. Samuels,* for the defendant Ocko.

NOONAN, J. The case was tried before the court without a jury. There are seven causes of action set out in the complaint, all of which are based on promissory notes made by the defendants as copartners and indorsed by the copartnership to the plaintiff bank. These notes are for various sums of money, totaling $6,250. The first note sued upon is dated August 18, 1930, and the last note is dated December 1, 1930, the five other notes bearing intermediate dates.

The complaint alleges that the principal of the first three notes sued upon has been paid, and each cause of action on these notes is for interest unpaid. The total of this interest is $48.57. The remaining causes of action are brought to recover the unpaid principal and interest. The total amount alleged to be unpaid with interest is $2,523.60, which is the amount sued for. All of the notes are signed " I. Moskowitz & Co.," and are made payable to " ourselves." The notes are indorsed in the manner in which they are signed, and are payable on their due dates at the plaintiff's bank located at Fifth avenue and Forty-fourth street, New York city.

At the time the notes were signed, I. Moskowitz & Co. was a copartnership composed of Isidor Moskowitz and Samuel Ocko. This partnership was dissolved on April 10, 1931, which was a date subsequent to the due dates of all the notes.

On April 10, 1931, when the partnership was dissolved, the defendants, as copartners, owed the plaintiff bank the sum of $5,000 on these notes. A formal agreement of dissolution was drawn up between the partners and dated April 16, 1931. This agreement of dissolution transferred the partnership assets to Moskowitz, and recognized that the indebtedness of the partnership to the plaintiff bank at that time was $5,000, and provided in part as follows: " The party of the first part [Moskowitz] agrees that he will assume, pay and satisfy, or cause to be paid and satisfied, all debts, liabilities and obligations of the partnership hereby dissolved, and will himself assume all liability on contracts heretofore executed by the partnership, and further agrees to indemnify and hold harmless the party of the second part [Ocko] from and against any and all claims, demands, suits or liability of any kind, nature or description whatsoever arising out of any of the said partnership debts, obligations or contracts. In addition thereto, the party of the first part does hereby deliver to the party of the second part a suitable indemnification from a third party indemnifying the party of the second part against loss by reason of any failure on the part of the party of the first part to pay the aforementioned indebtedness due to the Bank of United States in liquidation."

On March 4, 1932, the indebtedness on the notes was $2,900. On that day Moskowitz, who had already assumed the partnership business, offered to settle the indebtedness of $2,900 for the sum of $800. At that time the plaintiff learned of the dissolution of the partnership and that Moskowitz had succeeded to Ocko's interest and was conducting the business on his own account. The plaintiff was not interested in the arrangement which had been made between Moskowitz and Ocko concerning the indebtedness to the bank, and made no inquiry as to it. The plaintiff accepted the compromise offered by Moskowitz, and canceled the indebtedness of the partnership to the bank on the payment of the $800 by Moskowitz. A written release was given to him by the bank. In this release, dated August 11, 1932, the plaintiff reserved its rights " against Samuel Ocko and all other persons primarily or secondarily liable with respect to said promissory notes as surety or otherwise and to any security for said instruments."

The action brought by the plaintiff is against Moskowitz and Ocko, individually and as copartners, and the amount sued for as already stated is $2,523.60.

The summons and complaint were served on the defendant Ocko, but were not served on the defendant Moskowitz. Ocko has served Moskowitz with a copy of his answer, which contains a demand for judgment against him in the event that the plaintiff recovers against Ocko.

The first three causes of action admit that the principal of the notes alleged therein has been paid. The entire claim of the plaintiff as to these causes of action is for unpaid interest amounting in all to $48.27. As to this claim of interest, it appears that none of the notes involved bear any interest from their date of making. Therefore, the only interest that can be claimed is that computed from the dates of maturity, since a note containing no provision as to interest from its date of making will not carry interest until its maturity. (*Usefof* v. *Herzenstein*, 65 Misc. 45.) As to the interest from dates of maturity, it appears that the principal of the notes has been paid. The plaintiff, having accepted the principal, must be deemed to have waived the interest. In such circumstances, interest is regarded as a mere incident, and does not exist without the debt. The debt having been extinguished, interest must likewise be considered as extinguished. (*Southern Central R. Co.* v. *Town of Moravia*, 61 Barb. 180.) In *Bronner Brick Co.* v. *Canda Co.* (18 Misc. 681, 684) the court said: " The general rule is that in the absence of an agreement to pay interest, it is implied by law as damages for not discharging a debt * * * and where interest only is allowable as penalty and not by virtue of an agreement to pay the same, all claim therefor is barred by the receipt of the principal debt." The plaintiff, therefore, cannot recover the interest claimed on the first three causes of action, and they must accordingly be dismissed. This leaves the four remaining causes of action where the plaintiff claims a balance due with interest on the principal of the notes.

The question of law in relation to these causes of action I think has been fairly stated by defendants' counsel in his brief as follows: " Can a creditor, with knowledge of the dissolution of a debtor copartnership, and the assumption of the firm's liabilities by the continuing partner, release the continuing partner and reserve its rights against the retired partner? "

It is not disputed by either party to this suit that, by reason of the dissolution of the partnership and the transfer of the partnership property to Moskowitz and the assumption of the partnership debts by Moskowitz, he became the principal debtor as to those debts and Ocko became a surety for Moskowitz. This change of relationship of the parties must be recognized by the creditor, although he is not a party to the dissolution agreement and even

though he does not consent to it. To bind the creditor, however, there must be knowledge of the dissolution and the assumption of the partnership debts by the remaining partner. (*Millerd* v. *Thorn,* 56 N. Y. 402; *Colgrove* v. *Tallman,* 67 id. 95; *Palmer* v. *Purdy,* 83 id. 144; *Reed & Barton* v. *Ashe,* 18 App. Div. 501; *Akin* v. *Van Wirt,* 124 id. 83; *Filippini* v. *Stead,* 4 Misc. 405; *Phillips* v. *Mendelsohn,* 67 id. 142; *Drake* v. *Hodgson,* 118 id. 503; revd. on another ground, 207 App. Div. 783.) Such knowledge on the part of the plaintiff may be implied from the surrounding facts in this case. (*Grow* v. *Garlock,* 97 N. Y. 81.) The defendant Ocko is, therefore, entitled to the usual defense of a surety against any creditor of the firm who has knowledge of the dissolution and assumption of the debts by the remaining partner. (*Filippini* v. *Stead, supra; Grow* v. *Garlock, supra.*) Section 67, subdivision 3, of the Partnership Law has codified the law as follows: " Where a person agrees to assume the existing obligations of a dissolved partnership, the partners whose obligations have been assumed shall be discharged from any liability to any creditor of the partnership who, knowing of the agreement, consents to a material alteration in the nature or time of payment of such obligations." Whether or not the retiring partner has been indemnified by a third party for the payment of any of the firm debts which he may be called upon to make is immaterial. The position of the retiring partner remains only that of a surety for his former partner. (*Reed & Barton* v. *Ashe, supra.*) The controversy hinges on the effect of the acceptance of $800 by the plaintiff from Moskowitz in payment of the debt of $2,900 owed by the firm on the notes at that time when considered with the reservation of the plaintiff's rights against the defendant Ocko as surety.

If the plaintiff had not reserved its rights against Ocko, there is no doubt that the compromise with Moskowitz would have released Ocko as surety. Usually the liability of a surety ends with the extinguishment of the obligation of the principal. (*Tousey* v. *Barber,* 132 Misc. 861, 864.) In *Third Nat. Bank of Springfield* v. *Hastings* (134 N. Y. 501, 503), the court said: " In case two persons are liable for a debt, one as principal and one as surety, a voluntary release by the creditor of the principal with knowledge of the relation existing between the debtors discharges the surety."

The plaintiff, in giving its written release to Moskowitz, realized the importance of reserving its rights against Ocko as surety, for there was inserted in the release: " All rights are * * * reserved against Samuel Ocko * * * as surety or otherwise." Section 67, subdivision 3, of the Partnership Law, quoted above,

throws little light on the question, since nothing is therein stated as to the effect of the reservation of the rights of a creditor of a dissolved firm against a partner who has retired from the firm. It is agreed that section 237 of the Debtor and Creditor Law (Laws of 1909, chap. 17, as amd. by Laws of 1928, chap. 833) is not applicable to the situation. This section provides: " A release of a partner from a partnership liability shall release his copartners from the same liability to the creditor giving the release, but after a partnership has been dissolved, by consent or otherwise, any partner may make a separate composition or compromise with any partnership creditor, and such composition or compromise shall discharge from such liability the partner making it, and him only." This law applies only to a situation where the partnership has been dissolved by mutual consent of the partners and the partnership affairs have been wound up and the partnership business has been discontinued. It has no application to the situation presented in section 67 of the Partnership Law (*supra*), where the partnership is dissolved, but one partner continues the business and assumes the obligation.

This is apparent, I think, from the amendment to article 8 of the Debtor and Creditor Law by chapter 833 of the Laws of 1928, which provides in section 240 as follows:

" § 240.. Inconsistent laws repealed except civil practice act and partnership law. All acts or parts of acts inconsistent with this article are hereby repealed; but nothing in this article shall be construed as repealing any of the provisions of the civil practice act or the partnership law."

In *Spies* v. *National City Bank* (174 N. Y. 222) the court held that the release of the maker of a promissory note by the holder discharged the indorser, although the holder in giving the release had reserved his right against the indorser. An indorser of a note has been held to be in the nature of a surety for the obligation of the maker or a prior indorser. (*Pitts* v. *Congdon*, 2 N. Y. 352, 353; *Trimble* v. *Thorne*, 16 Johns. 152; *Brown* v. *Williams*, 4 Wend. 360; *Beardsley* v. *Warner*, 6 id. 610; *Farmers' Bank of Amsterdam* v. *Blair*, 44 Barb. 641; *National Park Bank of New York* v. *Koehler*, 204 N. Y. 174.) Prior to the decision of the *Spies* case, the courts of this State were divided on the proposition as to whether the release of the maker by the holder discharged the indorser or one who was secondarily liable on the instrument, although the holder had reserved his rights against such person.

In the following cases it was held that the release with the reservation did not discharge the surety: *Stewart* v. *Eden* (2 Caines, 121; 2 Am. Dec. 222); *Lysaght* v. *Phillips* (12 N. Y. Super. Ct. [5 Duer] 106, 108). In other cases the court held that the indorser or surety

was discharged. (*Brown* v. *Williams, supra; Farmers' Bank of Amsterdam* v. *Blair, supra.*)

The law on this point relating to negotiable instruments has been settled by the enactment of section 201, subdivision 5, of the Negotiable Instruments Law, which provides: " A person secondarily liable on the instrument is discharged: * * * 5. By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved." This subdivision of the statute was passed upon and upheld in the case of *National Park Bank of New York* v. *Koehler (supra)*. Outside of the field of negotiable instruments, the law of this State has declared from the beginning and without exception that a creditor, in releasing the principal debtor, may reserve his rights against a surety, and by such reservation the surety may be held liable for the unpaid part of the debt, and, in the event that he pays it, has a right of recourse against the principal debtor for reimbursement. (*Hubbell* v. *Carpenter*, 5 N. Y. 171; *Calvo* v. *Davies*, 73 id. 211; *Morgan* v. *Smith*, 70 id. 537; *National Bank of Newburgh* v. *Bigler*, 83 id. 51, 66; *Palmer* v. *Purdy*, 83 id. 144; *Wheeler* v. *Werner*, 140 App. Div. 695; *Brink* v. *Stratton*, 64 id. 331.)

There are several theories upon which such a doctrine is upheld. One is that the release is construed as a covenant not to sue the principal debtor. Another is that the principal debtor, by agreeing to the reservation of the creditor's rights against the surety, impliedly consents to the surety's right of reimbursement. The text-book writers also enunciate the same principle. Brandt on Suretyship and Guaranty ([3d ed.] § 165) says: " If the creditor, at the time he releases the principal, reserves his remedies against the surety, such release amounts to a covenant not to sue only, and does not discharge the surety."

In Childs on Suretyship and Guaranty, the author says (p. 251): " The rule does not apply if the creditor, when releasing the principal, specifically reserves his remedies against the surety; such a reservation being equivalent to a release on condition that the surety shall consent to remain bound. If the surety is compelled to pay the debt, after a release by the creditor with reservation of his rights, the surety can recover indemnity from the principal; the latter impliedly having assented thereto under the conditional release given." A similar declaration is made by the following authors: Williston Cont. (§§ 339, 1230); Pingrey Suretyship & Guaranty ([2d ed.] § 116). It may be that the doctrine is somewhat illogical in its foundation, as pointed out by Williston (*supra*), but, as herein shown, it has been followed and upheld in many cases in this State.

For the reasons stated, the plaintiff is entitled to recover judgment against the defendant Ocko for the amount sued for with appropriate interest, and Ocko is entitled to recover judgment over against his principal Moskowitz. Ten days' stay of execution and sixty days to make a case.